Max J. Wolff, Ref.
This action was tried before me by consent without a jury.
The plaintiff sues upon a written guaranty which reads as follows:
Lamar Sos. Mills. 12-18-58
Lamar, S. C.
Guarantying [sic] $8,500.00 purchased
Stylewise 40 days terms.
Comd. Credit Corp.
New York, N. Y.
The defendant, a New York corporation called Credit and Commodity Corporation (the signature upon the guaranty is somewhat different but it is not disputed that it was intended as defendant’s signature) is a factor.
The evidence at the trial established that Stylewise Sales Corporation (hereinafter called “ Stylewise ”), a New York corporation, filed a petition in the United States District Court for the Southern District of New York for an arrangement with its creditors; that this occurred in the latter part of November, 1958; that in consequence the plaintiff declined to deliver merchandise to Stylewise without a guaranty; that the defendant, having undertaken to act as a factor for Stylewise, entered into a written agreement in the middle of December, 1958, with Stylewise as a debtor in possession in the bankruptcy proceeding to finance the latter’s purchases in a sum not exceeding $25,000, all checks of Stylewise to be countersigned by the defendant. It then entered into the agreement of guaranty with the plaintiff, which is the basis of this action, in order to induce the latter to extend credit to Stylewise.
The questions which the case presents are as follows:
1. Was the guaranty a continuing one or was it exhausted when Stylewise paid $8,500?
2. Was the agreement of guaranty sufficiently evidenced by the writing, a telegram, to comply with the requirements of the Statute of Frauds (Personal Property Law, § 31, subd. 2)?
*766 3. "May the signature upon the telegram be regarded as the authorized signature of the defendant?
After the memorandum evidencing the agreement was executed by the defendant, the plaintiff sold to Stylewise merchandise aggregating in amount sums in excess of $8,500, indeed as much as $16,357.30. Altogether Stylewise paid $13,191.19, leaving an unpaid balance of $3,166.11, the sum in suit. The first and largest order was for $11,762.50, and this was given by Stylewise to the plaintiff on December 5, 1958. The largest unpaid balance outstanding at any time since January 17, 1959 was $9,294.18. No merchandise at all was shipped by plaintiff before it received the guaranty in suit.
The defendant contends that its obligation under the guaranty was exhausted when $8,500 was paid by Stylewise. But I construe this as a continuing guaranty for all sales made after the execution of the guaranty and covering any unpaid balance not exceeding $8,500. It is true that the writing refers to ‘ ‘ $8,500.00 purchased,” and strictly or grammatically construed might be thought to have reference only to purchases already made. However, the evidence shows that all merchandise involved in this case was shipped after the guaranty was signed and delivered and in reliance upon it. Also, the relationship of the defendant guarantor to Stylewise, the purchaser, is evidenced by a written contract between the defendant and such purchaser dated December 15, 1958, which provided that Stylewise as debtor in possession in the bankruptcy proceeding be empowered to enter into an agreement with the defendant whereby the latter would guarantee future purchases of Stylewise. By the same agreement the defendant was given control over these purchases, being authorized and required to countersign all checks drawn by Stylewise.
This written agreement and also the parol negotiations which preceded the execution of the guaranty are admissible for the purpose of showing the intention of the parties involved in the contract of guaranty. A guaranty should be liberally construed in order to effectuate its apparent purpose; and it should be given a reasonable interpretation, one which in the context of the surrounding circumstances will be meaningful. The defendant is the author of the guaranty and it would be unjust to so limit it as to make it applicable only to the first sales of $8,500 when in evident reliance upon it merchandise was sold by the plaintiff to a debtor in possession in a bankruptcy proceeding over a period of . time in total sums exceeding $16,000. The limitation for which the defendant contends would frustrate *767 the arrangement entered into in the bankruptcy proceeding as evidenced by the agreement of December 15, 1958 whereby the defendant undertook to factor the purchases of Stylewise and thus enabled it to continue in business although it was technically within the control of the bankruptcy court. The eases are clear that an agreement of guaranty, like any other, should be read in connection with the circumstances surrounding its making and that its meaning may be gathered by reference to such circumstances. Subdivision 2 of section 31 of the Personal Property Law does not require that the agreement itself be in writing but merely that there be a note or memorandum thereof subscribed by the party to be charged therewith or by his lawful agent. It is evident that Stylewise required a continuing source of supply and that the guaranty would not have served its purpose unless such supply was assured. Therefore, the meaning of the memorandum in reliance upon which the plaintiff made all deliveries involved in this case depends upon the evidence of the negotiations which preceded and upon the conduct of the parties which followed its execution. As part of such evidence we have the writing hereinabove referred to signed by the defendant and by Stylewise which contemplated the making of the guaranty and defendant’s control over the bank account and financial affairs of Stylewise. Indeed, an accountant selected by the defendant, its president in fact, was by the terms of such written agreement to audit and supervise the financial affairs of Stylewise.
That a guaranty should be liberally construed in context, particularly where, as here, the guarantor prepared it, is demonstrated by the following decisions: Rindge v. Judson (24 N. Y. 64) and cases therein considered ; Marks v. Cowdin (226 N. Y. 138,142-144) ; Sun Oil Co. v. Heller (248 N. Y. 28) ; Crabtree v. Elizabeth Arden Sales Corp. (305 N. Y. 48, 55-56) ; Schinasi v. Lane (118 App. Div. 76, affd. 191 N. Y. 545) ; Herring v. Mali (177 App. Div. 820) ; Steinhardt Bros. & Co. v. Marx (88 Misc. 26) ; Leyenson v. Lindenbaum (94 Misc. 309) ; Levy v. Margolies (152 Misc. 367) ; Gold v. Smith (155 Misc. 221) ; Cross, Austin & Ireland Lbr. Co. v. Gotham Frame & Moulding Co. (132 N. Y. S. 2d 890).
I therefore conclude that the plaintiff has established a continuing guaranty sufficient on its face to comply with the requirements of subdivision 2 of section 31 of the Personal Property Law, and that whatever ambiguity there may be has been clarified by evidence of the circumstances attending its execution and performance.
*768 The final question to be answered in relation to this guaranty is whether the typed signature on the telegram which was delivered to the plaintiff is defendant’s authorized signature. The signature was unquestionably typed by the telegraph company but the defendant does not deny that it caused the telegram to be written in the form in which it was delivered to the plaintiff.
It does not matter whether the telegram as delivered was copied from one written by an officer or employee of the defendant or was telephoned to the telegraph company by someone in defendant’s behalf. Precisely what happened here was not shown. The defendant could not well be heard to disclaim responsibility for the telegram and it is to the credit of the defendant that it has not attempted to do so. The telegram with the typed signature of defendant’s name emanated from the defendant which is responsible for it. The signature on the telegram in suit, although typed in the office of the telegraph company, is therefore defendant’s authorized signature within the requirements of the Statute of Frauds. In view of the way in which business is done nowadays, any other view would be unrealistic and would produce pernicious consequences, impeding the conduct of business transactions (Howley v. Whipple, 48 N. H. 487 ; Salma Sav. Banks v. Webster County Bank, 182 Ky. 604).
Defendant has also presented for consideration another point not involving the Statute of Frauds. It relies upon section 218 of the General Corporation Law. The plaintiff is a foreign corporation and did not have a certificate of authority from the Secretary of State to transact business within the jurisdiction. However, the evidence established that all sales made by the plaintiff into New York were subject to confirmation at the plaintiff’s home office outside the State of New York and that neither the contract in suit nor any other contract, insofar as indicated by the evidence, was made by the plaintiff within this State. Hence, the defendant did not sustain the burden of proving that the plaintiff made any contracts or transacted any business within this State, which required it to obtain a certificate of authority from the Secretary of State as a condition for maintaining any action here; and as indicated, the present action is not based upon a New York contract. The relationship of the plaintiff to this State was purely that of making deliveries in interstate commerce under contracts completed outside the State (see, generally, International Text Book Co. v. Tone, 220 N. Y. 313 ; St. Albans Beef Co. v. Aldridge, 112 App. Div. 803 ; National Merchandising Corp. v. Powers, 8 Misc 2d 881)
*769 Judgment may be entered in favor of the plaintiff and against the defendant in the sum of $3,166.11 with interest from February 28, 1959.