No. 81-01

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

ERNIE RYCKMAN and ERNIE RYCKMAN
SALES LTD.,

                Plaintiff and Respondent,

    vs.

WILDWOOD, INC.,

                Defendant and Appellant.

---

Appeal from:  District Court of the Eleventh Judicial District,
In and for the County of Flathead
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

    For Appellant:

        Murphy, Robinson, Heckathorn and Phillips, Kalispell,
        Montana
        I. James Heckathorn argued, Kalispell, Montana

    For Respondent:

        Hash, Jellison, O'Brien and Bartlett, Kalispell, Montana
        James Bartlett argued, Kalispell, Montana

---

           Submitted:  January 14, 1982

           Decided:  February 25, 1982

Filed: FEB 25 1982

_Thomas K. Kearney_
                    Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Defendant appeals a judgment of the Eleventh Judicial District Court, Flathead County, entered in favor of plaintiffs for the sum of $38,930.86. We reverse and remand for a new trial.

Plaintiffs instituted this action against defendant to recover damages for breach of an agreement by defendant to pay plaintiffs for services performed in connection with real estate sales. In addition to breach of contract, plaintiffs included a claim for fraud and asked for an accounting. Defendant admitted that plaintiffs were employed to perform certain services in connection with the sale of defendant's condominiums, but alleged that plaintiffs had been paid in full. Defendant further alleged that plaintiffs' claim was barred by the statute of frauds, section 28-2-903, MCA, and alleged that plaintiffs did not have standing to maintain an action for a broker's commission pursuant to section 37-51-401, MCA.

Keith Gustin, acting as president of defendant, first met plaintiff, Ernest Ryckman, in November of 1975. Gustin and Ryckman met at the corporate offices of defendant in Whitefish, Montana. Ryckman advised Gustin that he was a real estate broker in Calgary, Alberta, Canada. Gustin agreed that defendant would sell a condominium unit to Ryckman and allow Ryckman a 6% discount, the same being the equivalent to a real estate commission. Ryckman inquired about an arrangement whereby he could be paid a commission for selling additional units to his Canadian friends. Gustin advised Ryckman that defendant intended to construct

16 additional condominium units on adjoining property. Questions were raised regarding Ryckman's ability to broker condominium units in Canada and it was agreed that Ryckman, upon his return to Alberta, would discover the cost of registration in Canada. Subsequently, it was determined that it would cost approximately $25,000 to register for purposes of brokering the condominium units in Alberta. Gustin decided that this was an excessive cost. Ryckman testified that Gustin thereupon agreed to pay Ryckman a 6% fee "against the purchase price of my own unit for any prospective purchasers supplied by me who did in fact buy the unit." Ryckman testified that Gustin assured him that this was legal under Montana law. The record does not indicate that Gustin agreed to pay a 6% real estate commission in cash.

There is support in the record to show that plaintiffs engaged in promotional activities which, either directly or indirectly, resulted in the sale of 14 condominium units. Defendant contends that some of the sales did not result from the plaintiffs' efforts. However, the trial court found that all sales resulted from efforts by the plaintiffs and we are bound since there is "substantial credible evidence" in the record to support the finding. M.R.Civ.P., Rule 52.

On June 12, 1977, Ryckman submitted a statement to Gustin setting forth the amount of claimed commissions owed by defendant to plaintiff. Thereafter, Gustin advised Ryckman that he could not pay in cash and that he was willing to negotiate a settlement of the claim by offering to transfer "raw land" to the plaintiffs. Ultimately, negotiations terminated and this action was commenced.

The trial court held that the plaintiffs had standing to maintain the action, and that defendant, acting through Gustin, had committed a fraud upon the plaintiffs. Plaintiffs were awarded the full amount of damages claimed.

Dispositive issues on appeal are:

(1) Can the plaintiffs maintain this action for a 6% real estate commission or is such a claim barred by section 37-51-401, MCA?

(2) Is there "substantial credible evidence" of fraud which would support the trial court's finding that a fraud had been committed?

(3) Is the plaintiffs' claim barred by the statute of frauds, section 28-2-903, MCA?

(4) Do plaintiffs have an action premised upon constructive fraud?

PLAINTIFFS' STANDING

Plaintiffs' activities included (1) developing prospects for the purchase of defendant's condominium units, (2) sending those persons to Whitefish, Montana, and (3) using plaintiffs' condominium unit for the purposes of entertaining prospects and showcasing defendant's product. There is evidence in the record that plaintiffs were to be paid a 6% commission for performing these services. If no sales were made, plaintiffs were not to be paid.

Section 37-51-401, MCA, provides:

> "Any person engaged in the business of or acting in the capacity of a real estate broker or real estate salesman within this state shall not be permitted to bring or maintain any action in the courts for the collection of compensation for the sale or lease or otherwise disposing of real estate without first alleging and proving that such person was a duly licensed real estate broker or real estate salesman or authorized to act as a broker under the provisions of this chapter at the time the alleged cause of action or claim arose."

-4-

We must define "real estate broker" and determine the applicability of section 37-51-401, MCA.

The term broker is defined in section 37-51-102(2), MCA, wherein it is said:

> "'broker' includes an individual who for another or for a fee, commission, or other valuable consideration or who with the intent or expectation of receiving the same negotiates or attempts to negotiate the listing, sale, purchase, rental, exchange, or lease of real estate or of the improvements thereon or collects rents or attempts to collect rents or advertises or holds himself out as engaged in any of the foregoing activities. The term 'broker' also includes an individual employed by or on behalf of the owner or lessor of real estate to conduct the sale, leasing, subleasing, or other disposition thereof at a salary or for a fee, commission, or any other consideration. The term 'broker' also includes an individual who engages in the business of charging an advance fee or contracting for collection of a fee in connection with a contract by which he undertakes primarily to promote the sale, lease, or other disposition of real estate in this state through its listing in a publication issued primarily for this purpose or for referral of information concerning real estate to brokers, or both, and any person who aids, attempts, or offers to aid, for a fee, any person in locating or obtaining any real estate for purchase or lease."

We hold that the activities performed by Ryckman fall within the language "attempts to negotiate the listing, sale, purchase, rental, exchange, or lease of real estate or of the improvements thereon." The activities performed by Ryckman were typically those performed by a real estate broker in the promotion and sale of improved real estate. The clear intent of the statute is to govern such activities.

Section 37-51-401, MCA, bars a cause of action by a real estate broker seeking compensation for services performed "within this state." Plaintiffs argue that all of their services were performed in Canada and were therefore not

subject to regulation by the State of Montana. However, the record shows a different mode of operation. Plaintiffs purchased a condominium from defendants. This condominium was to be used in connection with the promotion and sale of those condominiums for which the plaintiffs here seek a commission. Plaintiffs generated business in the Calgary area and then used the Whitefish condominium for the purpose of hosting prospects. Whitefish activity was part of plaintiffs' sales promotion, although plaintiffs were not physically present in Whitefish during the time that such promotion was taking place. Nevertheless, promotion did occur in Montana which is subject to statutory regulation and for which plaintiffs cannot collect compensation without showing that they have a Montana broker's license. The trial court awarded a flat 6% fee; such fee would necessarily encompass activities performed in Montana. Therefore, the court erred. Since this case must be re-tried a discussion of damages is presented in the section of the opinion covering constructive fraud and its remedies.

FRAUD ALLEGATION

The trial court found defendant, acting through Keith Gustin, to be guilty of fraud. The court concluded:

> "Keith Gustin is the President of Wildwood, Inc., and is its duly authorized agent and the representations made by him are binding on Wildwood, Inc. Said agent made representations that were false, material, known to be false, with the intent that the representation should be acted upon by Ryckman, and that Ryckman was ignorant of the falsity of the statements, and relied on the truth of the statements, and he had a right to rely thereon, to his damages. Wildwood, Inc. is guilty of fraud and deceit."

Plaintiffs argue that there is support in the record for this finding premised upon two things. First, plaintiffs

argue that the evidence shows Gustin never intended to pay Ryckman a 6% commission, contrary to the representation made at the inception. Secondly, plaintiffs argue that Gustin misrepresented the state of Montana law by informing Ryckman that, under Montana law, the activity they proposed was legal.

There is no evidence in this record from which a trier of fact could infer that Gustin, from the inception of the agreement, did not intend to pay Ryckman for services rendered. In fact, the evidence is all to the contrary. The evidence conclusively establishes that Gustin intended to pay compensation to Ryckman but that the dispute arose because: (1) the parties did not agree on the form of compensation, and (2) the parties could not agree on how many condominium sales were due to the efforts of plaintiffs.

It is true that Gustin represented to the plaintiffs that, under Montana law, their plan for sales was legally permissible. Generally, fraud must be premised upon a misrepresentation of material fact, rather than law. However, there is an exception. As plaintiffs note, there is authority supporting fraud based upon a misrepresentation of "foreign law." See Restatement of Law of Torts, Second, Section 545; 37 Am.Jur.2d, Fraud and Deceit, Section 80; Annotation at 24 A.L.R.2d, Foreign Law - Misrepresentation, 1039.

There is no evidence in the record from which a trier of fact could infer that Gustin was misstating the Montana law as he knew it at the time the representation was made. Gustin personally acknowledged that he owed some compensation to the plaintiffs. During the pendency of the litigation, counsel for defendant, raised section 37-51-401, MCA, pertaining to standing, and section 28-2-903, MCA, the statute of frauds,

as defenses. There is no evidentiary support in the record for plaintiffs argument that Gustin knew of the state of law in Montana at the time the representations were made. In fact, we are here holding at least part of the agreement to be enforceable. The trial court's finding of fraud on Gustin's part is without support and must be set aside.

STATUTE OF FRAUDS

Defendant contends that section 28-2-903, MCA, prevents this action from being maintained because there was not an agreement in writing. That section provides in pertinent part as follows:

> "What contracts must be in writing. (1) The following agreements are invalid un- less the same or some note or memorandum thereof is in writing and subscribed by the party to be charged or his agent:
>
> ". . .
>
> "(e) An agreement authorizing or employ- ing an agent or broker to purchase or sell real estate for compensation or a commis- sion."

We have held that the activities contemplated here were those of a broker and therefore the section is applicable. However, defendant's answer alleges the following:

> "Defendant admits that plaintiff Ernie Ryckman and defendant entered into an oral agreement by the terms of which plaintiff Ernie Ryckman would be credited with the finder's fee on certain transactions, which fee would be credited toward the purchase of plaintiff Ryckman's condominium, . . .
>
> ". . .
>
> "All sums due plaintiff under their oral agreement have been paid."

In Hillstrom v. Gosnay (1980), ____ Mont. ____, 614 P.2d 466, 470, 37 St.Rep. 1087, 1092, this Court said:

> ". . . Villano's admission of the agreement is important because in cases involving admit- ted contracts, we have construed the statute of frauds less technically, refusing to allow

-8-

> the statute to be used so as to defeat its
> purpose to prevent the commission of a fraud."
> (Citations omitted.)

Here, the statute of frauds is inapplicable because defendant admits the existence of the agreement. The only dispute is whether additional compensation is due under the agreement.

CONSTRUCTIVE FRAUD

Plaintiffs have plead fraud but have not specifically outlined a cause of action premised upon "constructive fraud." The issues surrounding constructive fraud were obliquely treated. The trial court made the following finding of fact:

> "14. The conduct, acts, correspondence, and
> memoranda submitted as evidence reflect that
> the parties entered into a contract for attain-
> ing the sale of the condominium units, and by
> reason thereof, the parties owe to each other
> a fiduciary relationship."

Once a fiduciary relationship is established, a duty is owed which prevents one party to that relationship from gaining advantage over another. The gaining of advantage, in breach of such duty, constitutes constructive fraud. Section 28-2-406, MCA, provides in pertinent part as follows:

> "What constitutes constructive fraud. Con-
> structive fraud consists in:
>
> "(1) Any breach of duty which, without an
> actually fraudulent intent, gains an advan-
> tage to the person in fault or anyone claim-
> ing under him by misleading another to his
> prejudice or to the prejudice of anyone claim-
> ing under him;"

The facts here form the basis for a finding that Ryckman was employed to act as an agent for Defendant. The court has found, as noted above, that this arrangement resulted in a fiduciary relationship. We agree.

-9-

The existence of a fiduciary relationship between plaintiffs and defendant would foreclose defendant from taking advantage of plaintiffs. There is evidence in the record that plaintiffs performed services in Canada which resulted in the sale of condominiums in Montana. Defendant admits that defendant agreed to compensate for such services. Although recovery cannot be had for those services performed in Montana because of statutory proscriptions hereinbefore noted, defendant, who cannot profit at plaintiffs' expense, remains liable to compensate for those services rendered in Canada.

Upon remand, the trial court will hear evidence to determine whether there has been a breach of the fiduciary relationship previously found to exist. If such a breach is found, the trial court shall then determine the amount of damages which proximately flow from that breach. Such damages would include a reasonable compensation for plaintiffs' services rendered in Canada in furtherance of the agreement between the parties, but would exclude plaintiffs' services rendered in Montana. Because a 6% commission would anticipate and would include all brokerage services rendered, and since a portion of those services were rendered in Montana as previously indicated, the 6% figure should not be used to calculate damages proximately flowing from any breach of fiduciary relationship found. Defendant should, of course, receive credit for any amounts previously paid plaintiffs pursuant to their agreement.

This cause is remanded to the District Court with directions to proceed in conformity with this opinion.

Justice

-10-

We Concur:

_____

_____
John Conway Harrison

_____
Daniel J. Shea

_____
Justices