No. 81-506

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

CLARE E. DEIMLER,

Plaintiff and Respondent,

vs.

ROBERT E. OSTLER and JENNIE H. OSTLER,

Defendants, Appellants and Cross-
Claimants,

and

LARRY SEMENZA amd JAMES A. WANKEL,

Third Party Defendants.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable H. William Coder, Judge presiding

Counsel of Record:

For Appellants:

Small, Hatch and Doubek, Helena, Montana
Carl Hatch argued and John Doubek argued, Helena,
Montana

For Respondent:

Jardine, Stephenson, Blewett & Weaver, Great Falls,
Montana
K. Dale Schwanke argued, Great Falls, Montana

For Third Party Defendants:

Scott, Linnell & Newhall, Great Falls, Montana

Submitted:  June 25, 1982

Decided:  September 23, 1982

Filed:  September 23, 1982

_____  Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Appellants, Ostlers, appeal from summary judgment entered by the Eighth Judicial District of the State of Montana, Cascade County, in favor of respondent on respondent's principal claim and against appellants on their counterclaim. We affirm.

Respondent instituted this action to recover a real estate commission due on the sale of appellants' ranch located near Helmville, Montana. Appellants counterclaimed against respondent and joined the purchasers of the ranch as third party defendants alleging a claim against both respondent and third party defendants based upon misrepresentation and breach of obligation. All parties moved for summary judgment based upon an extensive factual record developed through deposition testimony and the submission of affidavits. The trial judge held that there was no material issue of fact and found respondent entitled to judgment for the full amount of commission claimed. Consequently, the relief sought by the appellants was denied.

The issue presented to this Court is whether the trial court erred in granting summary judgment. Since disposition of this issue involves a determination of whether there were factual issues presented to the trial court, we review extensively the record upon which summary judgment was based.

Ostlers owned a ranch near Helmville, Montana, which they desired to sell. Deimler, a licensed real estate salesperson working out of Great Falls, Montana, contacted the Ostlers and was advised that Ostlers would sell their property for $1,600,000.00. Ostlers advised Deimler that

-2-

they would not enter into an exclusive listing arrangement and that they would only agree to pay a 5% commission for sale of the ranch. A written contract was not executed.

Sometime later, Deimler contacted the Ostlers and presented a $1,000,000.00 offer to purchase from Semenza. Ostlers rejected the offer. Semenza's second offer, transmitted through Deimler, of $1.4 million dollars was rejected. Subsequently, Semenza offered Ostlers the full asking price of $1.6 million.

A meeting was arranged with Deimler, Semenza, Ostlers, and the Ostlers' counsel, Carl Hatch. A contract to sell and purchase was executed and recited that Semenza had paid $50,000.00 to Deimler as earnest money. The contract further provided that if financing was obtained, closing would be no later than thirty days following June 1, 1978, and that Ostlers agreed to pay Deimler a 5% commission on the sale. Semenza advised Ostlers that he was seeking financing through Western Farm Management Company of Billings, Montana.

On or about April 6, 1978, Ostlers asked Deimler if he had actually received $50,000.00 from Semenza as earnest money and Deimler informed Ostlers that he had not. Meanwhile, Semenza was attempting to obtain a $50,000.00 loan from First West Side National Bank of Great Falls, Montana, to satisfy the earnest money obligation. The bank's loan committee denied Semenza's loan, advising him that before the bank could approve the earnest money loan, the contract to purchase and sell must expressly state that it was contingent upon securing long-term financing and that if such financing was not obtained, the earnest money would be returned.

Semenza's attorney, K. Dale Schwanke, forwarded a new contract contingent upon Semenza obtaining long-term financing. Thereafter, Hatch informed Schwanke that Ostlers would not

execute the new agreement and advised him that the original contract failed for lack of consideration in that the earnest money had not been paid.

On April 29, 1978, the parties had a second meeting in Hatch's office. A new agreement was executed which specifically referred to the fact that Semenza was attempting to obtain long-term financing and that the parties' obligations under the agreement were conditioned upon a successful mortgage commitment. The 5% real estate commission was provided for in the revised agreement. Shortly thereafter, Deimler received a $50,000.00 earnest money deposit which was placed in Deimler's trust account. Subsequently, Ostlers and Carl Hatch received a copy of a May 10, 1978, mailgram from Western Farm Management Company announcing that a requested loan of $2.8 million dollars had been approved.

Because of the delay in obtaining a long-term financial commitment, the original closing date could not be met. Ostlers and Semenza executed an extension agreement stating that the closing date of the real estate transaction would be extended to coincide with the closing date of the loan. Both closings were completed on August 4, 1978.

At the time of closing, Ostlers disputed Deimler's claim to an $80,000.00 real estate commission. Deimler and Ostlers thereafter entered into an agreement whereby the $50,000.00 earnest money deposit would be held in Deimler's trust account until the commission dispute was resolved and that the remaining $30,000.00 claimed to be owed on the real estate commission would be disbursed from the loan proceeds and deposited in a trust account in the name of Ostlers and Deimler pending resolution of the dispute.

Ostlers contend that they do not owe a real estate commission because: (1) Deimler was not a real estate

broker as he represented at the time Deimler originally contacted Ostlers about the sale of the ranch; (2) Deimler misrepresented to Ostlers that a $50,000.00 earnest money deposit had been made when, in fact, it had not; (3) Deimler had misrepresented to Ostlers that Semenza was an able purchaser when he, in fact, was not and ultimately had to obtain one Wankel as a partner in order to close the transaction; (4) Deimler was actually representing Semenza, not Ostlers, and thereby breached the fiduciary relationship that was owed by the selling agent. In their counterclaim, Ostlers contend that they were damaged by the delay in closing.

In assessing the appropriateness of the summary judgment entered, this Court has been asked by appellants to resolve the following issues:

(1) Whether a commission is owed to one licensed only as a real estate salesperson at the time of the initial contact but is a real estate broker at the time of execution of the contract to sell and purchase.

(2) Whether a real estate broker is entitled to recover a commission from the seller when the real estate broker is representing the purchaser.

(3) Whether a real estate broker is entitled to a commission when the purchaser is not financially able to consummate the transaction alone, but must associate a partner.

(4) Whether there is a factual issue underpinning sellers' claim that the real estate broker engaged in fraudulent and deceitful conduct as well as threats and coercion in order to induce the sellers to enter into a written agreement to purchase and sell.

(5) Whether there is a material issue of fact upon which to base a legal claim for breach of fiduciary relationship.

-5-

Section 37-51-401, MCA, provides that a person must allege and prove that he or she was a licensed real estate broker or salesperson in this State at the time the claim arose, before an action can be maintained for collection of a commission. The undisputed facts are that respondent was a licensed real estate broker at the time this action arose. The statutory requirement was satisfied.

Ostlers contend that, notwithstanding the fact Deimler was a licensed real estate broker at the time the contract to purchase and sell was executed, he misrepresented his status at the time of initial contact. However, a fraud allegation must be based upon proof that there was a misrepresentation of material fact which was relied upon and which resulted in detriment. Lee v. Stockmen's National Bank (1922), 63 Mont. 262, 284, 207 P. 623, 630; Poulsen, et al. v. Treasure State Industries, Inc. and Kenneth K. Knight (1981), _____ Mont. _____, 626 P.2d 822, 826, 38 St.Rep. 218, 223. The undisputed facts in this case show that respondent Deimler produced a seller willing to pay the full asking price of $1.6 million and that the transaction was consummated for that figure. Ostlers received everything for which they bargained. The essential elements of fraud are absent.

Ostlers contend that Deimler was actually representing the purchaser and not the seller. Again, respondent produced sellers who paid the full asking price. There is simply no factual basis to support a contention that Ostlers were damaged by a conflict of interest.

Ostlers contend that Semenza was not a qualified buyer, as represented by Deimler. However, Ostlers subsequently closed the transaction with both Semenza and James A. Wankel as purchasers for the sum of $1.6 million dollars. Nevertheless, Ostlers claim to have been damaged by the delay occasioned

by Semenza's inability to close individually. However, Ostlers, represented by competent counsel, agreed to an extension of the closing date. Ostlers now are in the position of having ratified the entire transaction, having received the full benefit of the bargain, and on the other hand, while retaining the benefits, claiming to have been damaged by the delay to which they consented. Ostlers are clearly estopped. See 12 Am.Jur.2d, Brokers, Section 184, page 924.

Ostlers claim that they were coerced into closing the transaction. Ostlers were represented by counsel throughout. There is no evidence in the record to support a contention that they were either coerced or deceived to their detriment. Ostlers do not seek to set aside the agreement, but elect to stand on it. Their claim on this issue fails for the same reasons cited in resolving their previous contentions.

Ostlers lastly contend that there was a breach of the fiduciary duty owed by an agent to the principal. The existence of a fiduciary relationship between Deimler and Ostlers would foreclose Deimler from taking advantage of Ostlers. Ryckman v. Wildwood, Inc. (1982), _____ Mont. _____, 641 P.2d 467, 472, 39 St.Rep. 378, 384. Section 28-2-406, MCA. The undisputed evidence in the record shows that Deimler did not gain a financial advantage over Ostlers as the result of the principal-agent relationship.

The summary judgment of the District Court is affirmed in its entirety.

_____
Justice

We Concur:

_____
Chief Justice

-7-

_____
_____
Daniel J Shea
_____
Justices