No. 79-102

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

ROBERT A. HILLSTROM and
PATRICIA HILLSTROM, husband
and wife,

Plaintiffs and Respondents,

vs.

MAURICE GOSNAY and PAMELA GOSNAY,
husband and wife, and JEREMI VILLANO,

Defendants and Appellants.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
Honorable W. W. Lessley,Judge presiding.

Counsel of Record:

For Appellants:

Moore, Rice, O'Connell & Refling, Bozeman, Montana
Mark D. Refling argued, Bozeman, Montana

For Respondents:

Landoe, Brown, Planalp, Kommers and Lineberger,
Bozeman, Montana
J. Robert Planalp argued, Bozeman, Montana

Submitted: May 23, 1980

Decided: JUL 1 - 1980

Filed: JUL 1 - 1980

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Eighteenth Judicial District, Gallatin County, the Honorable W. W. Lessley presiding. Plaintiffs Hillstrom brought this action for a breach of contract against defendant Villano and for an interference with the contract against defendants Gosnay. Plaintiffs sought specific performance of their contract or, in the alternative, actual damages, and for punitive damages. The District Court, sitting without a jury, found that plaintiffs had a valid and enforceable contract with defendant Villano for the purchase of real property and that defendant Villano breached the contract. The court further found that defendants Gosnay did not interfere with the contract. The court ordered that defendant Villano specifically perform the contract with the plaintiffs but denied plaintiffs' request for punitive damages. Defendants bring this appeal.

The real property which is the subject matter of this action is a ten-acre tract of land located in Gallatin County, Montana, hereinafter referred to as "Tract B." Defendant-appellant Dr. Jeremi Villano is a medical doctor whose employment duties at the time of this controversy required her to frequently be away from her home in Bozeman, Montana, for one and two week periods. Villano is the owner and seller of Tract B in this action. Her realtor is Joyce Strahn.

From August 1977 to August 1978, no offers were received for the purchase of Tract B although the property had been advertised for sale. On July 31, 1978, Maurice and Pamela Gosnay, residents of Liberty, Missouri, who own a vacation home in the Gallatin Canyon near Bozeman, signed an option

-2-

to purchase Tract A, a ten-acre parcel adjoining Tract B. LeRoy Spain agreed to represent the Gosnays in obtaining Tract B also. Spain later telephoned Strahn and informed her that he had a party interested in Tract B and asked Strahn what the commission was and whether or not it would be split with him. Strahn informed Spain that the commission was 8 percent and that it was their policy to split the commission with the buyer's broker.

After several rejected offers, Spain telephoned Strahn on August 25, 1978, and informed her that his clients (the Gosnays) were willing to pay $54,500 for Tract B. Villano agreed to accept $54,500 but stated that she would rather have $55,000. Because Villano was leaving town the next day to go to Sundance, Wyoming, and because Strahn wanted something in writing, Strahn prepared two earnest money receipts, one with a sales price of $54,500 and the other with a sales price of $55,000. Villano signed both earnest money agreements in Strahn's office on August 26, 1978, before leaving for Wyoming. Strahn conveyed both offers over the telephone to Spain.

The next day, August 27, 1978, Patricia L. Hillstrom telephoned Strahn and informed her that she and her husband, who reside in Minneapolis, Minnesota, were interested in purchasing Tract B. Mrs. Hillstrom stated that her husband, Robert A. Hillstrom, was a lawyer and real estate broker and that he would call Strahn concerning Tract B.

Strahn telephoned Villano in Wyoming and informed her Hillstrom was coming into her office to discuss the purchase of Tract B. During this conversation, Strahn also informed Villano that the Gosnays would purchase Tract B for $54,500. Strahn advised Villano she could withdraw her written offer

-3-

to sell to the Gosnays because no earnest money had been received and the written offers had not been picked up or signed by them. After being advised of this, Villano agreed to withdraw her offer to the Gosnays to see what the Hillstroms would offer. Strahn telephoned Spain and informed him that Villano had withdrawn her offer to sell Tract B to the Gosnays.

The Hillstroms met with Strahn in her office on August 28, 1978. They offered $55,000 for the property. Thereafter, Mr. Hillstrom approached Strahn concerning Strahn's splitting the real estate commission with him. It was decided to reduce the sales price by one-half of the commission and reduce the stated commission to 4 percent.

After discussing the offer with Villano, Strahn dictated the wording of a telegram that Villano was to use in accepting the Hillstroms' offer, the language of the acceptance having been suggested by Mr. Hillstrom. Strahn told Villano to go to the telegraph office and sign this telegram. Villano informed Strahn there was no telegraph office in Sundance, Wyoming, and Strahn told Villano to send the telegram anyway. Villano telephoned Western Union and dictated the telegram as she was instructed to do. The telegram was sent to Landmark Real Estate, attention Joyce Strahn. It stated:

> "PLEASE CONSIDER THIS AS MY WRITTEN ACCEPTANCE
> OF THAT OFFER MADE ON MY REAL ESTATE IN THE
> GALLATIN CANYON AS PRESENTED TO LANDMARK REALTY
> BY ROBERT A. AND PATRICIA L. HILLSTROM ON
> AUGUST 28, 1978.

> "JEREMI VILLANO MD"

In a complaint dated September 13, 1978, the Gosnays sued Dr. Villano and Landmark Real Estate (Joyce Strahn) in an effort to establish some rights to the land. Following

negotiations conducted through their respective attorneys, Villano and the Gosnays reached an agreement for the sale of Tract B by Villano to the Gosnays in a contract dated October 20, 1978. Under this contract, Villano agreed to sell the property to the Gosnays for the price of $54,500. Villano was not required to pay any real estate commissions out of this price and the Gosnays agreed to hold Villano harmless and indemnify her for all expenses incurred defending any litigation commenced by the Hillstroms.

Villano gave the Hillstroms notice of rescission in letters dated October 18 and October 20, 1978, on the grounds that her consent was obtained by mistake and fraud in that she believed the sales price to be $55,000 and had not consented or been told that her real estate agent would split the commission and reduce the purchase price to $52,800. On November 29, 1978, the Hillstroms filed this action against Villano and the Gosnays.

There is but one issue for review by this Court:

Whether the typewritten name "JEREMI VILLANO MD" at the bottom of a telegram is a sufficient subscription to satisfy the requirements of the statute of frauds?

Appellants argue that there are two basic requirements of the statute of frauds, section 28-2-903(1)(d), MCA. Appellants concede that the first requirement, that there be some note or memorandum of the agreement in writing, has been satisfied. The second requirement, that the writing be subscribed by the party to be charged or by his agent, allegedly has not been satisfied in this case. It is argued that the typewritten name "JEREMI VILLANO MD" at the bottom of the telegram is not a sufficient subscription under the statute of frauds, which appellants claim requires an actual

-5-

signing with one's own hand. In addition, the statute requires that if an agreement is made by an agent of the party to be charged, the agent's authority must be in writing and subscribed by the party to be charged. Since the telegraph company, as an agent, was not authorized in a subscribed writing to make the agreement by "signing" Villano's typewritten name, appellants contend that the statute was not satisfied. Therefore, the Hillstrom-Villano agreement is invalid and void. Secondly, appellants argue that Villano did not have the requisite intent to authenticate the typewritten name "JEREMI VILLANO MD" at the bottom of the telegram as her signature.

The Montana statute of frauds provides:

"What contracts must be in writing. (1) The following agreements are invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged or his agent:

". . .

"(d) An agreement for the leasing for a longer period than 1 year or for the sale of real property or of an interest therein. Such agreement if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing and subscribed by the party sought to be charged." Section 28-2-903(1)(d), MCA.

Appellants concede that the first requirement of the statute, that there be some note or memorandum of the agreement in writing, has been satisfied by the telegram and the "Earnest Money Receipt and Agreement to Sell and Purchase" with attached documents. A telegram may constitute a sufficient written memorandum to satisfy the requirements of the statute of frauds. Yaggy v. B.V.D. Co. (1970), 7 N.C.App. 590, 173 S.E.2d 496; 72 Am.Jur.2d Statute of Frauds §300; 37 C.J.S. Frauds, Statute of, §§175, 176.

-6-

"No particular form of . . . instrument is necessary to constitute a memorandum or note in writing under the statute of frauds . . . It is the general rule that a memorandum wholly untechnical in form may be sufficient. It may consist of any kind of writing . . ." Johnson v. Ogle (1947), 120 Mont. 176, 181 P.2d 789, 791, quoting 49 Am.Jur. Statute of Frauds §321.

It is the second requirement of the statute of frauds which appellants contend was not satisfied in the transactions between the Hillstroms and Villano. This is the requirement that the writing be "subscribed by the party to be charged or his agent . . ." and that "[s]uch agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing and subscribed by the party sought to be charged." Section 28-2-903, MCA. Villano is the party sought to be charged in this particular suit and the person who must have subscribed a written note or memorandum under the statute of frauds. Thus, the narrow issue to be decided is whether the typewritten name "JEREMI VILLANO MD" at the bottom of the telegram is a sufficient subscription to satisfy the requirements of the statute of frauds. The District Court found that it was. We agree.

This Court has never ruled on what constitutes a valid subscription for purposes of the statute of frauds. Other courts, however, have consistently held that any mark affixed to a writing with the intent to authenticate it constitutes a sufficient subscription by the party sought to be charged. 72 Am.Jur.2d Statute of Frauds §358; 37 C.J.S. Frauds, Statute of, §§202-204; 4 Williston, Contracts, §585 (3rd Ed. 1961); Restatement of Contracts §210 (1936). (See also the Uniform Commercial Code, which, although it does not apply to sales of real property, nevertheless has a

similar definition of the word "signed." Section 30-1-201(39), MCA.) Provided the necessary intent to authenticate is shown, the typewritten "signature" on a telegram is a proper subscription within the meaning of the statute. Yaggy v. B.V.D. Co. (1970), 7 N.C.App. 590, 173 S.E.2d 496, 502; La Mar Hosiery Mills, Inc. v. Credit and Commodity Corporation (1961), 28 Misc.2d 764, 216 N.Y.S.2d 186, 190; Joseph DeNunzio Fruit Co. v. Crane (S.D.Cal. 1948), 79 F.Supp. 117, 128-129.

The two Montana cases cited by appellants in support of their narrow treatment, In re Sales' Estate (1939), 108 Mont. 202, 89 P.2d 1043, and In re Miller's Estate (1908), 37 Mont. 545, 97 P. 935, as well as the California case cited, In re Moore's Estate (1949), 92 Cal.App.2d 120, 206 P.2d 413, deal with the testamentary formalities for executing a will, not with the statute of frauds, and cannot be used here. Neither does Schwedes v. Romain (1978), ___ Mont. ___, 587 P.2d 388, 35 St.Rep. 1784, address the issue presented here because there was no memorandum of the parties' agreement in writing in that case.

We need not address the general question of whether or not a telegraph company is the agent of the sender of a telegram. Our statute provides that the agent's authority must be in writing subscribed by the party sought to be charged only if an agreement for the same of real property is "made" by the agent. It is apparent in this case that the agreement was not "made" by the telegraph company and that the company was Villano's agent, if at all, only for the limited purpose of communicating her telegram.

A side issue arose in this appeal as to whether there is substantial evidence in the record to support the Dis-

-8-

trict Court's findings that Villano understood the terms of the Hillstroms' offer and that she in fact accepted the offer intending her teletypewritten signature to authenticate her telegram. Notwithstanding appellants' contention that Villano did not intend her typewritten name to authenticate the telegram because she understood the sales price to be $55,000 with an 8 percent commission rather than the $52,800 with a 4 percent commission which resulted after Strahn and Hillstrom agreed to split the commission, the District Court found otherwise.

Villano's intent to authenticate her typewritten name on the telegram as her valid subscription is, of course, required to satisfy the statute of frauds. Radke v. Brenon (1965), 271 Minn. 35, 134 N.W.2d 887; Marks v. Walter G. McCarty Corp. (1949), 33 Cal.2d 814, 205 P.2d 1025, 1028. The intent to authenticate is established on the face of the telegram which states, "PLEASE CONSIDER THIS MY WRITTEN ACCEPTANCE . . ." The fact that the wording to be used was dictated by Hillstrom to Strahn, and then over the phone to Villano, indicates that both parties intended to bind themselves and close the deal.

This intent is supported further by plaintiff's testimony that she understood she had a firm deal, notwithstanding her contention that she thought the terms of the deal to be otherwise. The District Court accepted the testimony of Strahn that the figure of $52,800, as written on the "Earnest Money Receipt and Agreement to Sell and Purchase," was read to Villano over the telephone by Strahn. In any case, Villano received $88 more for her property under the split commission arrangement than she would have received under a sales price of $55,000 with an 8 percent commission. This

evidence establishes Villano's intent to authenticate her typewritten signature on the telegram.

We note that this case involves a contract which in fact has been admitted. Villano's admission of the agreement is important because in cases involving admitted contracts, we have construed the statute of frauds less technically, refusing to allow the statute to be used so as to defeat its purpose to prevent the commission of a fraud. Farmers Elevator Co. v. Anderson (1976), 170 Mont. 175, 552 P.2d 63; Gravelin v. Porier (1926), 77 Mont. 260, 250 P. 823, 829.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices