No. 91-300

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

PETER R. QUIRIN and PATRICIA F. QUIRIN, husband and wife,

     Plaintiffs and Respondents,

  -vs-

THOMAS A. WEINBERG and CAROLYN J. WEINBERG,

     Defendants and Appellants,

  and

COUNTY OF YELLOWSTONE, a Political Subdivision of the State of Montana,

     Defendant and Respondent.

_____

THOMAS A. WEINBERG and CAROLYN J. WEINBERG,

     Defendant, Third-Party Plaintiffs and Appellants,

  -vs-

THE STATE OF MONTANA and DELBERT WALTER and CAROL WALTER,

     Third-Party Defendants and Respondents.

_____

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Michael J. Whalen, Whalen & Whalen, Billings, Montana.



FILED

APR 15 1992

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

For Respondent:

Dennis Paxinos, County Attorney, Billings, Montana; Anne Sheehy and David Hoefer, Deputy County Attorneys, Billings, Montana; Court E. Ball, Towe, Ball, Enright & Mackay, Billings, Montana; Ward Swanser, Moulton, Bellingham, Longo & Mather, Billings Montana; Mark D. Parker, Attorney at Law, Billings, Montana

FILED

Filed: APR 15 1992

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: February 6, 1992

Decided: April 15, 1992

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Third party plaintiffs, Thomas A. and Carolyn J. Weinberg (Weinberg) appeal from an order of the Thirteenth Judicial District, Yellowstone County, granting summary judgment in favor of defendant Yellowstone County and third party defendants Delbert and Carol Walter and the State of Montana. The District Court dismissed Weinberg's negligence action against the County and the State because no duty was owed. Weinberg's request that the District Court order specific performance of an agreement between Weinberg and Walter was dismissed because no enforceable contract was found to exist. We affirm.

Weinberg raises three issues for our review:

I. Did the District Court err in granting Yellowstone County leave to amend its motion to dismiss and leave to file an amended answer to Weinberg's cross-claim?

II. Did the District Court err in determining that the State of Montana and Yellowstone County had no duty towards Weinberg in regards to providing accurate descriptions of the tax deed property?

III. Did the District Court err in finding that Walter and Weinberg had no enforceable contract upon which the court could order specific performance?

This action was initially filed by Peter R. and Patricia F. Quirin (Quirin) alleging that Yellowstone County acted negligently and that Weinberg had trespassed on and caused damage to his property. Quirin purchased approximately one acre of real property

2

in Yellowstone County. Thereafter, Quirin built a house which actually rests upon adjacent property belonging to third party defendants, Delbert and Carol Walter (Walter). Quirin and Walter acknowledged that Quirin's house actually was at least in part on Walter's land and discussed the possibility of a land trade. The District Court notes that Quirin knew the house was on Walter's property because in 1980 Quirin had the property surveyed; however, the survey was never recorded.

Subsequently, Quirin became delinquent on his taxes and eventually, through proceedings, a tax deed was issued to the County. There is no dispute that Yellowstone County was properly the owner of the property when Weinberg approached the County with an interest in purchasing the tax deed property. Quirin's house was listed by the State Department of Revenue as an improvement on the tax deed property. The County Assessor's office showed Weinberg photographs, appraisal sheets and a property description that indicated that the house was part of the tax deed property. Weinberg, believing the property to include the house and without further investigation, purchased the property for $1,500.

The next day, Weinberg talked to Walter who informed him that the house may actually rest on Walter's property. Weinberg states that Walter told him the problem of whose property the house rested on needed to be cleared up but that in any case if there was an encroachment on Walter's land, Walter was prepared to make a trade. Weinberg went to the ASCS office in Billings and after studying maps believed the entire house was off the property he had

3

purchased. Weinberg went back to the assessor's office and it was agreed that the property would be surveyed at the County's expense. Despite the problems associated with the property, Weinberg began a remodeling project on the house.

The survey revealed the house to be completely on Walter's property. Thereafter, Quirin filed suit against Weinberg for trespass in 'his' house and against Yellowstone County for negligently misrepresenting what property the house rested on. Weinberg filed a cross-claim against Yellowstone County for representing that Quirin's house was an improvement of the tax deed property when in fact it was not, and for assurances on which he relied in beginning the remodeling of the house.

In addition, Weinberg named the State of Montana as a third party defendant, alleging that the assessor, an agent of the State Department of Revenue, was negligent for failing to determine that the improvements made by Quirin were not on the property owned by him. Finally, Weinberg named Walter as a third party defendant alleging that he had agreed to make an exchange of land and should be required to go forward with such an exchange. The District Court dismissed all of Weinberg's claims as a matter of law and Weinberg appeals.

I.

Weinberg argues that the District Court erred in granting Yellowstone County leave to amend its answer to Weinberg's cross-claim and its motion to dismiss to include a defense of legislative immunity under § 2-9-111, MCA. Section 2-9-111, MCA, was amended

4

by the 1991 Legislature and given retroactive application to cases not reduced to final judgment by May 24, 1991. Although the District Court's decision pre-dates the adoption of the amended statute, the amended version is applicable to the instant case.

Under § 2-9-111, MCA (1991), a legislative body (the County in this case) is not immune from causes of action arising from the negligence of its employees. Dagel v. City of Great Falls (1991), 819 P.2d 186, 48 St.Rep. 919. Therefore, under § 2-9-111, MCA, as amended, legislative immunity is not an applicable defense to Weinberg's action. Whether or not the court properly allowed amendment of the answer and the motion to dismiss is made moot by the amendments to the immunity statute. We conclude that legislative immunity is not an applicable defense to the instant case.

## II.

Weinberg next claims that the District Court erred in determining that the State of Montana and Yellowstone County had no duty towards Weinberg. Weinberg alleges that the State, through employees of the Department of Revenue, and the County through the Clerk and Recorder, breached a duty owed to Weinberg. Weinberg argues that the assessor's office advised him that the property was owned by Yellowstone County, could be purchased at tax sale and showed him a picture of the house representing the house to be an improvement of the tax deed property.

The Clerk and Recorder is alleged to have admitted that the problem was the County's mistake and to have informed Weinberg,

5

after specific inquiry, that Weinberg owned the property and could begin renovations. Specifically, Weinberg argues that both the State and the County breached a duty to "act responsibly and refrain from making specific representations upon which Weinberg reasonably relied".

Weinberg cites this Court's statement that ". . . we think in general that the public has a right to rely upon the advice and actions of public employees and officials." Chennault v. Sager (1980), 187 Mont. 455, 463; 610 P.2d 173, 177. However, Chennault involved the duty of public employees and officials to comply with statutory law regarding the disposition of public lands such that the public interest would be protected. The instant case does not involve a dispute regarding compliance with statutory requirements and disregard of the public interest. Instead, the instant case involves a claim for a private right of action.

The State is generally subject to suit and liable for its torts. Mont. Const. Art. II, Sec. 18 (1972), § 2-9-102, MCA. However, "[it] is fundamental to the law of Torts that there can be no negligence if no duty exists." Ambrogini v. Todd (1981), 197 Mont. 111, 118, 642 P.2d 1013, 1017. Whether or not a duty exists is a question of law. When reviewing questions of law, we will determine if the trial court's determination as to law is correct. Our review will be plenary. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

Resolution of this issue requires that we determine whether a prospective purchaser of tax deed property is entitled to rely on

6

statements made by the Assessor's and Clerk and Recorder's offices in regard to the property. The District Court ruled that no such entitlement existed and that a prospective purchaser must proceed on the basis of caveat emptor -- let the buyer beware. We agree.

The general rule is that the doctrine of caveat emptor applies with full force against purchasers at tax sales. See 72 Am. Jur. 2d, State and Local Taxation §1036. Long ago, we held that:

> The assessment and sale of property for delinquent taxes is a proceeding in invitum. The purchaser at such sale buys at his peril, and the rule of caveat emptor applies. Larson v. Peppard (1909), 38 Mont. 128, 99 P. 136, citing Birney v. Warren (1903), 28 Mont. 64, 72 P. 293.

These cases are still the law of the State of Montana.

To find liability in this case would make the County and/or the State a guarantor of title in tax deed proceedings. We decline to do so. The District Court held, and we agree, that:

> In the transaction here, a tax sale purchase, the Court cannot mandate upon a governmental entity, a duty which would virtually require a complete title search, survey, and reassessment each time a property is sold for delinquent taxes. Such actions are the only way the government employees, whose job it is to respond to public inquiries, could provide totally accurate tax sale information and the entity could avoid liability. The burden is more pragmatically placed upon the tax sale purchaser, according to the caveat emptor doctrine, to not purchase in haste, but to make a thorough and independent investigation of the property, seeking the counsel of adjoining landowners, former owners, title insurance agents, surveyors, and other property professionals.

Weinberg's own affidavit makes clear that through his own investigatory measures, the very next day, he was able to determine that a problem existed and that the house probably did not lie on the tax deed property.

7

We conclude that the doctrine of caveat emptor applies to tax deed sales. Neither the County nor the State have a duty entitling a tax sale purchaser to rely on information regarding the assessment, description or location of tax deed property. The District Court is affirmed.

## III.

Weinberg's final contention is that he and Walter had an enforceable contract to exchange the property that the house rests on for property that Weinberg purchased. Weinberg recognizes that an agreement to exchange land generally requires written expression to satisfy the statute of frauds. However, Weinberg relies on § 30-11-111, MCA, and the court's power to specifically enforce an agreement in case of part performance.

Section 30-11-111, MCA, provides:

> **Contract for sale of real property.** No agreement for the sale of real property or of any interest therein is valid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof.

(Emphasis added.)

When reviewing a motion for summary judgment, all reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party opposing the motion. Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511. Viewing the offered proof in a light most favorable to Weinberg, the inference can be drawn that Walter discussed a land exchange with both Weinberg and Quirin, worked with Weinberg and the surveyor in

8

placing stakes and laying out lines for the exchange and sat by idly while Weinberg made improvements to the property in reliance on the exchange. Weinberg contends that these actions constitute part performance and under such circumstances the agreement is taken out of the statute of frauds.

The District Court ruled that discussions regarding land trade were insufficient to create a contractual obligation. The court ruled that there was insufficient evidence of any consideration moving from Weinberg to Walter. At best, the court held that Walter may have anticipated contracting in the future. Furthermore, the District Court held that while initiation of the remodeling project was "some" evidence of Weinberg's part performance, there was no evidence or indicia of what the parties agreed to do and the terms of their agreement.

The sufficiency of acts to constitute part performance can be decided as a matter of law. Schwedes v. Romain and Mudgett (1978), 179 Mont. 466, 587 P.2d 387. In Schwedes we distinguished between acts which truly constitute part performance and those merely undertaken in "contemplation of eventual performance." To be an act sufficient to constitute part performance, we held the act "must be unequivocally referable to [the] contract." Schwedes, 179 Mont. at 472.

We have held that when possession is taken in pursuance of a contract, followed by the making of valuable improvements, there is a sufficient part performance. Hogan v. Thrasher (1925), 72 Mont. 318, 233 P. 607. We have further held that the statute of frauds

9

cannot be enforced where following an agreement a "buyer has made an irretrievable change in position, or the defendant has secured an unconscionable advantage or inflicted an unjust and unconscionable loss upon the plaintiff." Bolz v. Meyers (1982), 200 Mont. 286, 298, 651 P.2d 606, 612. However, these cases both involved clear and specific agreements. The question remains in the instant case of whether or not a clear and specific agreement was ever entered.

Section 27-1-412(5), MCA, states that "an agreement the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable" cannot be specifically enforced. An agreement to agree to terms in the future is not an enforceable agreement whereby specific performance will be granted. Steen v. Rustad, 132 Mont. 96, 313 P.2d 1014. The Court, in Steen, stated:

> It is of course well-settled that a contract to be specifically enforceable must be complete and certain in all essential matters included within its scope. Nothing must be left to conjecture or surmise, or be so vague as to make it impossible for the court to glean the intent of the parties from the instrument, or the acts sought to be enforced. (Citations omitted.)
> It is equally well-settled that absolute certainty and completeness in every detail is not a prerequisite of specific performance, only reasonable certainty and completeness being required. Those matters which are merely subsidiary, collateral, or which go to the performance of the contract are not essential, and therefore need not be expressed in the informal agreement. (Citations omitted.)

In the instant case there is a lack of evidence of any specific agreement. We agree with the District Court that no inference can be drawn from the evidence that Walter did more than

10

contemplate entering an agreement in the future. While it is true that Weinberg took possession of and began remodeling the house, there is a lack of evidence of any consideration passing to Weinberg upon which an agreement could be proven. Specific performance cannot be enforced against a party to a contract if he has not received adequate consideration for the contract. Section 27-1-415(1), MCA.

We conclude that Walter and Weinberg never entered an enforceable agreement. The District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur in Parts I and III of the majority opinion, and I concur that the State of Montana was entitled to summary judgment. However, I would not grant summary judgment to the State of Montana for the same reason that it was affirmed by the majority. I would affirm the granting of summary judgment to the State because the State's pre-tax sale representations were not the cause of plaintiffs' damages.

Subsequent to the tax sale, plaintiffs learned that the Quirin house was not actually on the Quirin property. At that point, they had a right to rescind the purchase that they made at the tax sale. The fact that they went ahead and incurred expense to make improvements to the Quirin house was not because of representations made by the State prior to the sale, it was because of representations made by Delbert Walter and officials in the County Clerk and Recorder's office that the problem would be cleared up and Weinbergs could make the improvements they felt necessary before occupying the house.

I dissent from that portion of Part II of the majority opinion which affirms summary judgment for Yellowstone County. I agree that the rule of *caveat emptor* normally applies to the purchase of property at a sale for delinquent taxes. I also agree that the County had no duty to correct the erroneous property description prior to the sale, and no duty to clear up the problem after the sale. However, in this case, unlike the usual situation, the

12

County assumed that duty when it made affirmative representations to the Weinbergs that it was their property in spite of the property line discrepancy; the County would take care of the problem; and the Weinbergs could proceed to make the improvements they felt were necessary to occupy the house.

The Restatement (Second) of Torts § 552, provides:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by the justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

A claim for negligent misrepresentation is established when a plaintiff can show:

(1)   that the defendant supplied false information for the guidance of plaintiff in his business transaction;

(2)   that the plaintiff justifiably relied upon such information; and

(3)   that the defendant failed to exercise reasonable care or competence in obtaining or communicating such information.

*See Bottrell v American Bank* (1989), 237 Mont. 1, 19, 773 P.2d 694; *Brown v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.* (1982), 197 Mont. 1, 12, 640 P.2d 453, 458.

When the employees of the Yellowstone County Clerk and Recorder's office made these affirmative representations, they assumed a duty to act reasonably. Whether or not their representations were reasonable, and whether or not the other necessary elements of negligent misrepresentation were present,

13

were issues of fact for a jury, or the district court in the event that a jury had been waived. I agree with the New York Court of Appeals when, in *Lindlots Realty Corporation v. Suffolk County* (1938), 15 N.E.2d 393, it distinguished the duty normally owed by a county at a tax sale from the duty owed when affirmative representations are made. In that case, the court stated:

> Nor does the rule of caveat emptor apply. The county had the option to sell this property by bargain and sale deed, with the mere recital that it was acquired at a tax sale and without other representation. In such case, the doctrine of caveat emptor would apply. The defendant, however, through its officer, chose to obtain such advantages as it could by selling this property through additional representations which turned out to be false. In such case the doctrine of caveat emptor obviously would not apply.

*Lindlots Realty*, 15 N.E.2d at 396.

I would reverse the District Court's order granting summary judgment to Yellowstone County and remand this case to the District Court for a factual determination of whether the County's representations to the Weinbergs were negligent; whether they were false; whether the Weinbergs reasonably relied on those representations; and whether the Weinbergs suffered damages as a result of those representations.

_____
Justice

I concur in the foregoing concurrence and dissent of Justice Trieweiler.

_____
Justice

14

April 15, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Michael J. Whalen
WHALEN & WHALEN
2825 3rd Ave. N., #504
Billings, MT 59101

Dennis Paxinos, Yellowstone County Attorney
Anne Sheehy, Deputy County Attorney
P.O. Box 35025
Billings, MT 59107

Court E. Ball
TOWE, BALL, ENRIGHT & MACKEY
2525 6th Ave. N.
Billings, MT 59101

Mark D. Parker
Attorney at Law
P.O. Box 7212
Billings, MT 59103-7212

Ward Swanser
MOULTON, BELLINGHAM, LONGO & MATHER
P.O. Box 2559
Billings, Mt 59103-2559

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy
