No. 01-305

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 214

JOANNE R. HANLEY MORTON, as Personal Representative
of the Estate of Robert W. Hanley, Deceased,

     Plaintiff, Counterclaim Defendant,

     v.

KEITH A. LANIER, SUE E. LANIER,

     Defendants, Counterclaimants, Third Party Plaintiffs and
     Respondents,

     v.

JOANNE R. (JACOBSEN) HANLEY, Individually, and as
Personal Representative of the Estate of Robert Hanley, Deceased,

     Third Party Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
               In and for the County of Lake,
               The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:
           Kathleen O'Rourke Mullins, O'Rourke Mullins Law Offices, Missoula,
Montana

        For Respondent:
           John A. Mercer, Turnage, O'Neill & Mercer, Polson, Montana

Submitted on Briefs: February 21, 2002

Decided: September 19, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

**¶1      This action was initiated in the Twentieth Judicial District Court, Lake County, by Robert Hanley (Robert) against his next-door neighbors, Keith and Sue Lanier (Laniers). Robert sought to recover damages related to alleged breach of building restrictions and interference with enjoyment of property. Laniers filed a counterclaim alleging, among other claims, that Robert interfered with Laniers' right to a shared access easement. Laniers filed similar third party claims against Robert's future wife, Joanne Jacobsen (Joanne). Several pleadings were filed in this matter, including Laniers' application for preliminary injunction against Robert and Joanne (hereinafter, Hanleys).**

¶2      On July 14, 1997, the District Court preliminarily enjoined Robert from interfering with Laniers' enjoyment of their property in various respects, including displaying or directing flood lights towards Laniers' residence. Following a bench trial on those issues left unresolved by a previous order of partial summary judgment, the District Court entered its Findings of Fact, Conclusions of Law and Judgment on March 27, 2001. The court concluded that an amended plat signed by Robert and Laniers constituted an instrument in writing sufficient to create a shared access easement for the benefit of both parties and concluded that Hanleys interfered with Laniers' use of the shared easement. The court also concluded that Hanleys interfered with Laniers' peaceable enjoyment of their property by failing to redirect their flood lights as ordered under the preliminary injunction, and awarded damages to Laniers. Joanne, acting as third party defendant and as representative for the

2

estate of her late husband, Robert, appeals from the District Court's Order on Application for Preliminary Injunction, entered July 14, 1997, and the court's Findings of Fact, Conclusions of Law and Judgment, entered March 27, 2001. We affirm.

¶3     We restate the issues as follows:

        1.   Whether an undisputed and partially performed agreement between adjacent property owners to relocate a common boundary and share an access easement, memorialized by an amended plat and signed by both parties, violates the Statute of Frauds; and

        2.   Whether the District Court erred when it found Hanleys in contempt for violation of the court's injunctive order and awarded damages to Laniers.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶4     The properties at issue in this matter are two long narrow lake shore parcels on Flathead Lake, near Dayton, Montana. The tracts slope down towards the lake at an angle and are 100 feet at their widest point and approximately 725 feet in length. Robert purchased his property (Lot 9) in 1979, which included an existing house and carport. Laniers purchased their property (Lot 10) in 1970, but did not begin constructing their home until the Spring of 1996. Prior to starting construction, Laniers discovered that Robert's carport rested on the common boundary line between the lots and that a rock wall extended beyond the boundary line onto Laniers' lot. Subsequently, Laniers and Robert mutually agreed to relocate the common boundary and also to share an access easement.**

¶5     In the Spring of 1995, Steve Day (Day), a licensed surveyor, confirmed the boundary encroachments and prepared an Amended Plat incorporating his recent survey. On the Amended Plat, Day provided that the purposes for the survey were "to relocate the common

3

boundaries between lots within a platted subdivision" and "to correct errors in construction where a rock wall encroache[d] on neighboring property." Day also depicted on the Amended Plat various roadways, including a road that ran down Laniers' lot along the common boundary, angling onto Robert's property in a southeasterly direction, and then continuing down towards the lake. Day labeled this road as a "20' SHARED ACCESS EASEMENT." On August 28, 1995, Laniers and Robert signed the Amended Plat and it was recorded with the Lake County Clerk and Recorder on August 29, 1995.

¶6 Early in 1996, Laniers began the construction of their home, which was positioned in part in front of Robert's house, but at a lower elevation. Robert was unhappy with the placement of Laniers' new home, and relations between the parties quickly deteriorated. Ultimately, Robert filed his Complaint on March 22, 1996, alleging claims of private nuisance, easement of view by implication, breach of covenant, and negligence. Laniers filed their Answer and Counterclaim on May 24, 1996, and asserted various defenses as well as counterclaims including breach of covenant, trespass, and private nuisance. Leave was subsequently given to join Joanne, who had lived with Robert since 1988 and throughout these proceedings, as a third party defendant.

¶7 Laniers filed an Application for Order to Show Cause on July 29, 1996, seeking, among other things, an injunction precluding Robert and others residing in his home from directing blinking flood lights toward Laniers' home, and from directing flood lights at Laniers' home at unreasonable hours. The court began the show cause hearing on Laniers' application on August 7, 1996, and concluded it on September 30, 1996.

4

¶8 On July 14, 1997, the District Court entered its Order on Application for Preliminary Injunction and Rationale. The court preliminarily enjoined Robert from interfering with Laniers' enjoyment of their property in several ways, including a prohibition from "displaying on their residence blinking flood lights," and "directing flood lights from their residence or boat toward [Laniers'] residence." Following entry of this order, relations between the parties continued to deteriorate. **Robert filed a Second Amended Complaint on November 13, 1997. Joanne and Robert were married in the Fall of 1997, and near that time, Robert was diagnosed with cancer and began medical treatment.**

¶9 On February 20, 1998, Laniers filed a Motion for Partial Summary Judgment, directed to all claims set forth in Robert's Second Amended Complaint. Later that evening, Robert passed away. Ultimately, and after several more rounds of pleadings were filed, on October 19, 1999, the District Court granted Laniers' Motion for Partial Summary Judgment as to the issues of private nuisance, easement by implication, negligence, breach of contract, and attorney fees, but denied the motion for partial summary judgment as to the breach of covenant claim. In this same order, the court ordered that Laniers' counterclaims and third party complaint would be considered a third party pleading asserted against Joanne as an individual and as personal representative of Robert Hanley's estate.

¶10 The District Court conducted a bench trial on May 22, 2000 on those claims left unresolved by summary judgment. The court heard testimony from Keith and Sue Lanier, Joanne Hanley, a friend of Hanleys who was familiar with the property, Day, a real estate appraiser, and several guests who had visited Laniers' residence. Nearly a year later, on

5

March 27, 2001, the District Court entered its Findings of Fact, Conclusions of Law and Judgment.

¶11   Among other findings, the District Court concluded, based in part upon Robert's deposition testimony, that one of the purposes of the Amended Plat was the creation of an easement agreement with Laniers. The court went on to conclude that Hanleys interfered with Laniers' use of the shared easement. The court also concluded that Hanleys engaged in deliberate and conscious interference with Laniers' peaceable enjoyment of their property by failing to redirect their flood lights in accordance with a previous court order and accordingly, found them in contempt. The court found that Hanleys' failure to comply with the injunction and Robert's willful and wrongful blocking of the shared easement interfered with Laniers' peaceable enjoyment of their property and justified an award of damages in the sum of $5,000 in favor of Laniers. Joanne appeals from the District Court's July 14, 1997 Order on Preliminary Injunction, and the March 27, 2001 Findings of Fact, Conclusions of Law and Judgment.

**STANDARD OF REVIEW**

**¶12   This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. *Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, ¶ 24, 28 P.3d 467, ¶ 24 (citing Rule 52(a), M.R.Civ.P.). A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has**

**been committed.** *Guthrie*, **¶ 24 (citing *Engel v. Gampp*, 2000 MT 17, ¶ 31, 298 Mont. 116, ¶ 31, 993 P.2d 701, ¶ 31). Additionally, in determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party.** *Guthrie*, **¶ 24 (citation omitted).**

¶13 We review a district court's conclusions of law to determine whether those conclusions are correct. *Guthrie*, ¶ 24 (citation omitted). *See also, Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. Finally, we review a judgment of contempt to determine whether there is substantial evidence to support it. *Marks v. First Judicial Dist. Court* (1989), 239 Mont. 428, 430, 781 P.2d 249, 250 (citation omitted).

## DISCUSSION

### Issue 1

**¶14 Does an undisputed and partially performed agreement between adjacent property owners to relocate a common boundary and share an access easement, memorialized by an amended plat and signed by both parties, violate the Statute of Frauds?**

¶15 In its Findings of Fact, Conclusions of Law and Judgment, the District Court concluded that the Amended Plat constituted an instrument in writing sufficient to satisfy the Statute of Frauds. Joanne appeals the court's ruling, arguing the Amended Plat did not contain words of conveyance and thus failed to properly memorialize the agreement to create a shared access easement. Laniers respond that only an instrument in writing is required to

7

create an easement, not a conveyance in writing, and that the intended effect of the shared easement is evident on the Amended Plat and from Robert's deposition testimony.

¶16    The Statute of Frauds is codified at § 28-2-903, MCA, and § 70-20-101, MCA. Section 28-2-903(1)(d), MCA, provides that "an agreement . . . for the sale of real property or of an interest therein," is "invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged."  Similarly, § 70-20-101, MCA, provides that:

> No estate or interest in real property . . . can be created, granted, assigned, surrendered, or declared otherwise than by operation of law or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring it or by his lawful agent thereunto authorized by writing.

¶17    The question as framed by the parties is therefore whether the memorialized Amended Plat was a sufficient "instrument in writing" to comply with the Statute of Frauds.  Although the parties have focused their arguments on this question, we find it unnecessary under the facts presented here to reach it, as we conclude that, regardless of the answer to that question, the Statute of Frauds would not in any event invalidate the parties' agreement to create a reciprocal easement.  We so conclude for two reasons.

¶18    First, both parties admitted there was an agreement to establish a shared access easement.  This Court has repeatedly taken the position that we "will not allow the statute of frauds, the object of which is to prevent fraud, to be used to accomplish fraudulent purposes." *Hayes v. Hartelius* (1985), 215 Mont. 391, 396, 697 P.2d 1349, 1353 (citing *Ryckman v. Wildwood, Inc*. (1982), 197 Mont. 154, 641 P.2d 467; *Hillstrom v. Gosnay* (1980), 188 Mont. 388, 614 P.2d 466; and *Farmers Elevator Co. of Reserve v. Anderson* (1976), 170 Mont. 175,

8

552 P.2d 63). In *Hayes*, the record established that the parties made an oral agreement for the purchase of a home and we held that "it would be a fraud on the defendant to allow plaintiffs to admit to the contract, and then allow them to avoid its obligations by asserting the statute of frauds." *Hayes*, 215 Mont. at 396, 697 P.2d at 1353.

¶19     Here, The District Court was presented with undisputed testimony regarding the circumstances leading to the easement agreement and preparation and filing of the Amended Plat. During the bench trial, Keith Lanier (Keith) explained that he approached Robert after discovering Robert's carport and rock wall encroached on the common boundary. Keith further explained that the two of them reached an agreement that Laniers would adjust the property line, thus slightly increasing the size of Robert's lot to accommodate the encroachments, and in turn the parties would share the access road. In his deposition taken in August, 1996, Robert testified that the Amended Plat acted as both "an easement agreement and also a boundary realignment at the same time," and when asked if he thought the Amended Plat was an easement agreement, Robert responded, "Yes." Robert also explained, "That was the agreement that they would -- gave [sic] us an easement. We gave them an easement here (indicating) and they would redo the boundary lines so I didn't have a problem with my carport." The District Court was thus presented with undisputed testimony that Robert and Laniers agreed to create a reciprocal easement. As we concluded in *Hayes*, we will not allow Joanne to now deny the existence of the undisputed agreement to establish a shared access easement.

9

¶20 A second reason the Statute of Frauds does not render the shared easement agreement invalid can be found in the doctrine of part performance. Section 70-20-102, MCA, provides exceptions to the Statute of Frauds, and states in relevant part, "Section 70-20-101 must not be construed to . . . abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof." *See* § 70-20-102(3), MCA. *See also*, 7 Thompson on Real Property, Thomas Edition, § 60.03(a)(6)(i) (David A. Thomas et al. eds., 1994) ("Some states have created an exception to the Statute of Frauds 'and have allowed the creation of easements by oral contract where the contract has been relied upon and acted upon.' ") (citation omitted). **This Court has long recognized the doctrine of part performance as an exception to the Statute of Frauds.** *Hayes***, 215 Mont. at 396-97, 697 P.2d at 1353 (citations omitted) (the withholding of property from the market and relinquishing possession for four years, and allowing plaintiffs to claim the tax deduction on interest were sufficient acts to constitute part performance). The sufficiency of acts to constitute part performance can be decided as a matter of law.** *Quirin v. Weinberg* **(1992), 252 Mont. 386, 393, 830 P.2d 537, 541 (citing** *Schwedes v. Romain* **(1978), 179 Mont. 466, 472, 587 P.2d 388, 391). For an act to be sufficient to constitute part performance, it " 'must be unequivocally referable to the contract.' "** *Quirin***, 252 Mont. at 393, 830 P.2d at 541 (quoting** *Schwedes***, 179 Mont. at 472, 587 P.2d at 391).**

¶21 Here, Robert and Keith both testified that they agreed that Laniers would adjust the common boundary if the parties could agree to the shared access easement. Following that

10

agreement, the parties signed the Amended Plat, which evidenced both the adjusted boundary and the shared access easement. Moreover, both parties utilized the access road after executing the Amended Plat, and Robert received the benefit of an expanded boundary line to his property. In short, the parties performed their obligations under their agreement. Part performance occurred, at least for a time. Thus, the Statute of Frauds could not defeat the parties' agreement to share the access easement.

¶22 Based upon the foregoing reasoning, and under the factual circumstances presented here, we conclude the District Court did not err when it determined that a shared access easement was created. Although the District Court's conclusion was based on its determination that the Amended Plat constituted a written instrument under the Statute of Frauds, and not upon the grounds discussed here, we will uphold a court ruling if it is correct, regardless of the reasons given below for the result. *See Debcon, Inc. v. City of Glasgow*, 2001 MT 124, ¶ 22, 305 Mont. 391, ¶ 22, 28 P.3d 478, ¶ 22 (citing *Clark v. Eagle Systems, Inc*. (1996), 279 Mont. 279, 287-88, 927 P.2d 995, 1000).

**Issue 2**

**¶23 Did the District Court err when it found Hanleys in contempt for violation of the court's injunctive order and awarded damages to Laniers?**

¶24 On July 14, 1997, the District Court entered its order on Laniers' Application for Preliminary Injunction and Rationale, where it preliminarily enjoined Robert from:

> (1) displaying on their residence blinking flood lights; (2) directing flood lights from their residence or boat toward [Laniers'] residence; (3) posting on his property, directed at [Laniers'] residence, signs containing fighting words . . . ; (4) stalking and staring into the

11

windows of [Laniers'] residence; and (5) speaking "fighting" words to [Laniers] or their guests.

Relevant to this appeal, the court included the following rationale in its July 14, 1997 preliminary injunction:

> The evidence from all parties supports that [Robert] has approximately 6 bright lights on the deck of his residence that shine on to [sic] the Lanier house. [Robert] testified that these lights have been in the same location and at the same angle for approximately 15 years, and that they are used to illuminate his property below his house for security reasons. He testified that at one point he installed photocells so the lights would automatically turn on and off according to the surrounding natural light, and the photocells malfunctioned, resulting in the lights blinking. At the time of the hearing he had removed the photocells and manually operated the lights, but he testified that he intended to reinstall the photocells which might result in more blinking.
> . . . .
> The [District] Court further finds that flood lights directed at [Laniers'] residence in the middle of the night, and particularly blinking flood lights that illuminate [Laniers'] residence, are not necessary to achieve the legitimate security purposes offered by [Robert], and would unreasonably interfere with [Laniers'] peaceable enjoyment of their property. However, [Robert] is entitled to illuminate his property for security purposes. Therefore, it is appropriate to enjoin [Robert] from directing flood lights at [Laniers'] residence and also to enjoin him from operating blinking flood lights that illuminate [Laniers'] residence.

¶25   On March 27, 2001, following the bench trial, the court entered its Findings of Fact, Conclusions of Law and Judgment, wherein it found that Hanleys' deck lights no longer blinked and there had been no further incidents of spotlights shining up from the lake. However, the court also found that Hanleys had not redirected the flood lights as directed by the court's July 14, 1997 order, and found them in contempt. The court noted that, "by and large, the flood lights on the Hanley property illuminate the Lanier property much more than the Hanley property, and that they are on all the time,

12

even when there is no one present at the Hanley residence." Although the court noted Joanne was not subject to the court's preliminary injunctive order, it also found that Joanne "obviously chose to continue directing the lights in a way previously found by the [c]ourt to be a nuisance and an interference with [Laniers'] peaceable enjoyment of their property."

¶26 Joanne contends the District Court erred when it found Hanleys in contempt for violating the July 14, 1997 injunctive order, asserting that the court enlarged upon the injunction when it found the Hanleys failed to redirect the flood lights away from Laniers' residence and property, since the order only enjoined Robert from directing lights toward Lanier's "residence." Joanne also contends that the court's 1997 order was not directed to her at all.

¶27 In reviewing an appeal from an order of contempt, this Court's standard of review is whether substantial evidence supports the judgment of contempt. *See Marks*, 239 Mont. at 430, 781 P.2d at 250. During the trial, Joanne admitted that neither she, nor Robert, had redirected their deck lights following the court's order and also testified that the lights were sometimes left on all night or when she was not home. Keith Lanier explained that while the blinking lights had ceased following the court's 1997 injunction, the other lights remained unchanged and continued to illuminate Laniers' property, not the Hanley property. Several witnesses testified about the nature of the lights, describing them as spot lights, and explaining that the lights were aimed directly at the Lanier residence, particularly the front entryway.

13

¶28    Upon review of the preliminary injunction and the evidence presented during the bench trial, we conclude the court did not err in finding Hanleys in contempt for failing to comply with the injunction as to their deck lights.  We also conclude that there was no relevant distinction between Laniers' property and residence as asserted by Joanne, given the close proximity between the houses and the court's previous order and rationale.  Therefore, we conclude that the District Court did not err in assessing damages based on Hanleys' failure to comply with the preliminary injunction.  Finally, we conclude that Joanne's contention that she is exempt from the provisions of the preliminary injunction is without merit.

¶**29**    Upon her substitution for Robert, her late husband, Joanne assumed responsibility as personal representative of Robert's estate for any allegations presented against Robert in Laniers' counterclaims, which included his failure to comply with the court's injunctive order.  Moreover, under § 27-19-105(4), MCA, an order granting an injunction is "binding only upon the parties to the action; their officers, agents, employees, and attorneys; *and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise*" (emphasis added).   In their Answer to Laniers' Second Amended Counterclaim, filed November 6, 1997, **both Robert and Joanne acknowledged the court's preliminary injunction and admitted that it remained in effect.  Joanne also testified that she had received and read a copy of the order.  Based on the record before us, we conclude that Joanne participated and acted with her**

14

**husband Robert in failing to follow the court's directives as to the deck lights, and therefore conclude that Joanne was not exempt from the court's order prohibiting Hanleys' deck lights from being directed towards Laniers' residence.**

¶30 Accordingly, the District Court's Judgment is affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER
/S/ JIM RICE